## Lawrence Savings & Trust Co. v. Black

*Robert E. Jamison,* for executor.

*Sherman K. Levine,* for defendant.

### OPINION

LYON, J., July 27, 1972.—This is a declaratory judgment proceeding which concerns the construction of a stock retirement agreement, dated January 7, 1963, between Hables, Inc., a closely held Pennsylvania business corporation, and the stockholders, Louis T. Leddy and Fred W. Black. Because of ill

health, Leddy could not actively participate in the business affairs of the corporation or sign tax returns for a period of three years before his death. He then owned 4,623 shares of the corporation stock and Black then owned 2,774 shares.

The corporation, pursuant to the stock retirement agreement, now desires to purchase from the estate of Leddy all the corporate stock owned by him at the time of his death. The questions for decision in this proceeding concern the date and method of valuation of the stock, namely, (1) whether the entire insurance proceeds on the life of Leddy should be included as an asset of the corporation in determining the value of the stock, and (2) whether the valuation date for the stock owned by Leddy should be the date of his death or the end of the corporate fiscal year preceding his death.

When the parties executed the agreement, they fixed the stock value at $10 per share and caused the corporation to secure an insurance policy with a face value of $70,000 upon the life of Leddy, and one on the life of Black with a face value of $42,000. The agreement provides for a periodic reevaluation of the stock and the purchase of additional insurance on the life of each stockholder in order to assure the availability of funds for the purchase by the corporation of the stock of a deceased stockholder. The fifth article of the agreement provides that the corporation shall pay all premiums necessary to maintain the insurance policies in force and shall be the beneficiary and absolute owner of all policies purchased by it on the life of a stockholder. The sixth article provides that the amount of insurance carried by the corporation on the life of each individual stockholder shall determine the minimum valuation of the stock owned by such stockholder, and that, in the event of death of such stockholder, the corporation agrees to purchase the

stock of such stockholder with the insurance on the life of such deceased stockholder. The parties had not reevaluated the stock, altered the life insurance policies or amended the agreement when Leddy died on the twenty-fifth day of April, 1971.

I

Neither the present situation of the parties nor the equities of the case which now exist can be given great weight in determining the true intention of the parties eight years before when they executed the agreement on January 7, 1963. In addition, the attorney for the estate of Leddy admits, as he must, that the inheritance and estate tax cases have no relevance to the determination of the intention of the parties. In order to determine the meaning of the agreement, we must examine the entire contract, since it is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made, and the objects they apparently had in view and the nature of the subject matter: Mather Estate, 410 Pa. 361, 189 A. 2d 586 (1963).

The preamble of the agreement states the intention of the stockholders to be: ". . . the stockholders desire to insure the continuity of harmonious management of the corporation by providing for the purchase of a stockholder's shares of stock by the corporation in the event a stockholder dies. . ."

The method of attaining this object is recited in the fourth article which states:

"In order to assure the availability of funds for the purchase of the shares of stock of a stockholder by the corporation, the corporation has purchased insurance on the life of each stockholder."

That the parties intended the face value of the insurance policy to equal or approximate the value of a deceased stockholder's stock at the time of his death is evidenced by article sixth of the agreement which provides that the corporation shall purchase the stock of a deceased stockholder with the insurance proceeds it receives from the policy on his life, and that such insurance shall determine the minimum value of the stock owned by him.

It thus appears that the agreement was executed with the intention of benefiting each of the parties. The estate of a deceased stockholder is guaranteed as a minimum, regardless of the actual stock value, the face value of the insurance policy on his life. The corporation is guaranteed uninterrupted harmonious management in event of the death of a stockholder, but it cannot benefit financially from the insurance proceeds upon the life of such stockholder. The surviving stockholder would benefit from his increased equity in the corporation resulting from the corporate purchase of the outstanding shares of stock owned by the deceased stockholder.

The agreement was clearly intended as a guarantee of these benefits. The parties could not accurately have anticipated the time of death of a stockholder, nor could they have predicted the fiscal condition of the corporation at that time. Like all business men, they were aware that the corporation could prosper in the future or suffer financial reverses. As business men, they also knew that the stock of a deceased stockholder could be purchased by the corporation only if there were sufficient corporate funds available for that purpose,[1] and they also understood that the pro-

---

[1] Act of May 5, 1933, P.L. 364, art. VII, as amended, 15 PS §1701; Trimble Co., 339 F. 2d 838 (3d Cir., 1964).

ceeds of an insurance policy on the life of a deceased stockholder would ordinarily be available for the stock purchase. The insurance policies on the lives of the stockholders, therefore, assured the intended benefits of the agreement to all parties.

It is clear that the parties never intended the insurance proceeds on the life of a deceased stockholder to be included as an asset of the corporation when establishing a price for sale of stock to the corporation. In the first place, all the intended benefits to the parties would not be guaranteed under a contrary construction of the agreement; for if insurance proceeds are included as an asset of the corporation, it is unlikely that they would ever be sufficient to purchase the stock owned by a deceased stockholder as was plainly intended by the parties when the agreement was executed. Secondly, if the parties had voluntarily reevaluated the stock under article three of the agreement, they could have included the cash surrender value of the insurance policies as an asset of the corporation; but, as hard-headed business men, they could not have realistically considered the face value of the insurance policies as an asset. Furthermore, under article three of the agreement, the value of the stock fixed by the parties is conclusive of the value of the stock at the time of a stockholder's death if it had been agreed to and set by them within a period of two years prior thereto. There is some indication that the parties intended the stock to be valued according to the book value of the corporation, for they provided in article three for a stock revaluation by a certified public accountant if they had not fixed the value within two years of the death of a stockholder.[2] It would be ludi-

---

[2] Accountants generally utilize the book value method when determining the corporate stock value. The term, "book value," includes any good will of the corporation.

crous to conclude that the parties intended a different formula for evaluating the stock merely because they fortuitously had not reevaluated it within two years of a stockholder's death.[3]

## II

There is no question that article three provides for a stock reevaluation upon the death of a stockholder where the parties did not fix the stock value within two years of the death of such a stockholder. The parties agree that, in such case, article three requires the stock value to be determined by the independent public accountant regularly retained by the corporation to audit its books. But they disagree concerning the date when the value of the stock must be determined. The estate of Leddy contends that the valuation date should be the date of death and the corporation asserts it should be the end of the fiscal year preceding the date of death. That the stock may have been worth more or less at the end of the corporate fiscal year preceding the death of a stockholder, or may have been worth more or less on the date of death of a stockholder, is not helpful in determining the valuation date intended by the parties at the time the agreement was executed.

It is the opinion of this court that the parties intended the stock to be reevaluated as of the date of death of a stockholder. The agreement does not provide a definite valuation date for the stock upon the death of a stockholder. But it specifically provides that the

---

[3] We do not hold here that the value of Leddy's stock must be determined by the book value method, since that question is not before the court in this proceeding.

stockholders may redetermine the value of the stock for the purpose of the agreement within 30 days after the end of each fiscal year of the corporation. In light of the definite time fixed in the agreement for a re-evaluation of the stock by the parties, the absence from the agreement of a definite valuation date for the stock upon the death of a stockholder must be construed as indicating an intention that the stock be valued as of the date of death of a stockholder. If the parties had intended another date, they could have said so in the agreement in clear and precise language as they did when indicating the definite time for re-evaluation of the stock by the parties.

## ORDER OF COURT

Now, July 27, 1972, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed:

1. The value of the 4,623 shares of stock of Hables, Inc., owned by Leddy at the time of his death shall be determined by the independent certified public accountant regularly retained by that corporation to audit its books.

2. The said certified public accountant shall not consider the insurance proceeds on the life of Leddy when computing the value of such stock.

3. The said certified public accountant shall redetermine the value of such stock as of April 25, 1971.

This order shall become final and absolute unless exceptions are filed within 20 days from the date hereof.